**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BOKF, NA | § | |
| BOK Financial Securities, Inc. (BOKFS) | § | |
|     CRD No. 17530 | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| Kyle Bowen, an individual | § | JURY TRIAL DEMANDED |
|     CRD No. 4260651 | § | |
| | § | |
| Truist Investment Services, Inc. | § | |
|     CRD No. 17499 | § | |
| | § | |
| Defendants. | § | |

**BOKF NA and BOK FINANCIAL SECURITIES, INC. (BOKFS) VERIFIED**
**COMPLAINT**
**WITH REQUEST FOR INJUNCTIVE RELIEF[1]**

Plaintiffs, BOKF, NA ("BOKFNA") and BOK Financial Securities, Inc., as legal successor to BOSC, Inc. ("BOKFS"), (collectively "BOKF"), respectfully bring this action against Defendant Kyle Bowen ("Bowen"), an individual, and Truist Investment Services, Inc. ("Truist").

BOKFNA and BOKFS have filed this Complaint and an Emergency Verified Application for a Temporary Restraining Order and Preliminary Injunction (the "Verified Application") and seek from this Court a temporary restraining order ("TRO"), Preliminary Injunction ("PI"), and other relief.

BOKFNA requests a temporary restraining order ("TRO") and preliminary injunction ("PI") and other relief.

BOKFS seeks only a Temporary Restraining Order ("TRO") and Preliminary Injunction

---

[1] *See also*, BOKFNA and BOKFS' Emergency Application for Injunctive Relief filed this same date.

("PI") against the FINRA Member Defendants.[2]

## INTRODUCTION

1.      This case arises generally through the actions of Bowen, who resigned his position at BOKF on September 26, 2023 in conspiracy with and/or on behalf of Truist: (i) in violation of duties of loyalty, (ii) in breach of his agreements involving BOKF, including, but not limited to, agreements to provide 30-days' notice of resignation, not solicit customers, maintain confidentiality, and return of information provisions, and (iii) through misappropriation of confidential, proprietary information, and/or trade secrets belonging to BOKF and/or BOKF customers.

## STATEMENT OF FACTS

2.      Bowen is subject to a Representative Agreement and an Incentive Agreement including notice provisions, restrictive covenants, and duties of loyalty. *See* Exhibit 1 Representative Agreement and Exhibit 2 Incentive Agreement (collectively "BOKF Agreements").

---

[2] The Financial Industry Regulatory Authority ("FINRA" regulates the conduct of registered financial representatives, called Associated Persons, and FINRA Member Firms. Bowen is a FINRA Associated Person. Truist is a FINRA Member Firm. The activities of the Associated Person and the FINRA Member Firm are generally subject to arbitration. FINRA's rules permit broker-dealers to obtain injunctive relief in court to preserve the status quo under their agreements. FINRA Rule 13804(a) states that, in addition to filing a statement of claim with FINRA, "parties may seek a temporary injunctive order from a court of competent jurisdiction." BOKFS has filed an arbitration action with FINRA. BOKFS asks this Court to enter injunctive relief pending the resolution of the substantive merits of BOKFS' claims by a FINRA arbitration panel. This process is expressly authorized by FINRA Rule 13804(a). BOKFS will seek all other relief beyond injunctive relief against FINRA Member Firm and Associated Person in the alternative dispute resolution forums specified by the rules and regulations involving FINRA. BOKFS will have filed a FINRA Statement of Claim this same date.

3.      Early on the morning of September 26, 2022, Bowen submitted his notice of immediate resignation to his BOKF direct manager, Patrick Staudt ("Staudt"), without any regard for the 30-day written notice obligation included in his Representative Agreement. *See* Ex. 3.

4.      Bowen subsequently told Staudt that was going to Truist and that Truist had actually written his resignation letter. *See* Ex. 4, Affidavit of Patrick Staudt at ¶ 5-6. When Staudt asked if they could discuss Bowen's departure, Bowen declined, advising Staudt that Truist had offered him $2.5 million and 50 basis points to his grid. *Id*. at ¶ 7.

5.      Staudt reminded Bowen of his obligations of notice and of non-solicitation and Bowen indicated he was aware of those. *Id*. at ¶ 8. Bowen then told Staudt that Truist advised him not to talk to anybody at BOKF, and he abruptly left the office. *Id*.

6.      At the time of his resignation, Bowen was the designated Private Wealth Advisor for over $221 million in BOKF assets under management ("AUM") that generated over $1,200,000 in annual recurring revenue. *Id*. at ¶ 3.

7.      By the close of business on September 26, 2023, BOKF transmitted, by email to Bowen and by overnight courier to both Bowen and his purported new employer, Truist, a letter with a reminder regarding Bowen's continuing obligations to BOKF, a demand to comply with applicable agreements, a demand to search for and return BOKF data, and a demand to preserve all documents and tangible items pertaining to the transition of employment. *See* Exhibit 5.

8.      BOKF subsequently learned that Bowen had registered as a broker with Truist on the day of his resignation and immediately began soliciting BOKF customers for his new employer. *See* Exhibit 6. Over the course of the next several days, as BOKF contacted clients formerly serviced by Bowen, 12 clients indicated they had received a letter from Bowen regarding

his new employment situation with Truist. *See* Exhibit 4 at ¶ 10. Most of these same clients indicated that they had also received phone calls directly from Bowen. *Id.*

9.      On September 27, 2023, Staudt spoke to D.R., one of the clients who advised that Bowen had contacted them via phone and letter. *Id.* at ¶ 11. D.R. indicated that they planned to move their investment business to Bowen at Truist. D.R.'s account represents over $20 million in investment AUM that generates over $125,000 in annual recurring revenue. *Id.*

10.     On Thursday, September 28, 2023, one particular client Staudt spoke with, T.F.. was particularly irate about learning of Bowen's departure from BOKF directly from Bowen via a letter and a phone call. *Id.* at ¶ 12. The client asked, "doesn't he have a non-solicitation agreement?" *Id.* T.F. furnished Staudt with a copy of the letter from Bowen and Truist that T.F. received on Thursday, September 28, 2023. *Id.* at ¶ 13. The letter envelope showed a time stamp of 10:33 AM on September 26, 2023, and the return addressee was identified as  Bowen. *See* Exhibit 7.

11.     Given Bowen and Truist's flagrant disregard for Bowen's BOKF Agreement obligations, BOKF sent Bowen and Truist a second letter demanding that they cease the conduct in violation of Bowen's obligations. *See* Exhibit 8.

12.     On October 3, 2023, BOKF finally received a response to its letters from Truist, who denied that any improper conduct occurred, and Bowen, who provided no substantive response. *See* Ex. 9. BOKF is aware, however, that Bowen is continuing to actively solicit BOKF clients to bring their business to Truist in violation of his obligations to BOKF. As of October 5, 2023, BOKF received transfer paperwork for at least 10 BOKF customer relationships totaling over $8,000,000 in AUM that generated over $32,000 in annual recurring revenue. *See* Exhibit 4 at ¶ 14.

13.     Meanwhile, Truist is participating in such violative conduct by holding out Bowen as a Truist employee on the FINRA website, even while Bowen continues to owe a duty of loyalty to BOKF, and participating in Bowen's wrongful solicitation to BOKF customers, even signing the letters Bowen has mailed to BOKF customers. *See* Exhibits 6-7.

14.     Therefore, BOKFNA and BOKFS files this Complaint and seek immediate injunctive relief.

## PARTIES

15.     BOKFNA is a regional financial institution operating under a charter issued by the Office of the Comptroller of the Currency with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172. BOKFNA is a subsidiary of BOK Financial Corporation.

16.     BOKFS, CRD No. 17530, is an Oklahoma corporation with its with its headquarters and principal offices located at One Williams Center, Tulsa, Oklahoma 74172 and is a registered broker/dealer in all 50 states. BOKFS is a subsidiary of BOK Financial Corporation. BOKFS was formerly known as BOSC, Inc.

17.     Bowen is an individual who resides at 4536 Bordeaux Avenue in the City of Dallas, Dallas County, Texas and upon information and belief is currently working out of Truist's office in Dallas Texas.

18.     Bowen is a registered financial representative. Bowen's FINRA CRD No. is 4260651.

19.      Bowen started employment with BOKF on April 16, 2011. Until providing his resignation without notice on September 26, 2023, Bowen was working for BOKFNA and was a registered representative of BOKFS. Bowen's position was identified as Private Wealth Advisor. Exhibit 10 (Private Wealth Advisor Position Description).

20.     Truist, CRD No. 17499, is a Georgia corporation. Truist maintains offices at 100 Crescent Court, Suite 1330, in the City of Dallas, Dallas County, Texas.

<u>**JURISDICTION AND VENUE**</u>

21.     This Court has jurisdiction over this Temporary Restraining Order (TRO) and Preliminary Injunction Proceeding (PI) proceeding pursuant to 28 U.S.C. § 1331 because the matter in controversy arises under the federal Defense of Trade Secrets Act, 18 U.S.C. §1831 et seq.

22.     This Court has jurisdiction over this proceeding to the extent it involves state law claims as a result of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367; such claims on which the application for injunctive relief are premised are so closely related to the Defense of Trade Secrets Act claim that they are part of the same case.

23.     This Court has personal jurisdiction over Bowen because he resides in, is a citizen of, and is domiciled in Dallas, Texas, and was employed at BOKF's office in Dallas, Texas.

24.     This Court has personal jurisdiction over Defendant Truist because it operates in the State of Texas and conducts business operations in the City of Dallas, Dallas County, State of Texas.

25.     Not only is there a federal question based upon the federal Defense of Trade Secrets Act, 18 U.S.C. §1831 et seq., there is complete diversity of the Plaintiff who is a citizen of and headquartered in Oklahoma and the Defendants who are citizens of Texas and Georgia. The amount in controversy exceeds $75,000 exclusive of interest and costs. There is diversity jurisdiction pursuant to 28 U.S.C. § 1332.

26.     Venue is proper in the United States District Court for the Northern District of Texas – Dallas Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events

giving rise to the claims in this action occurred in this judicial district.

**BOKF Business and Bowen's Obligations to BOKF and Customers**

27.     BOKF incorporates and realleges the allegations contained in ¶¶1-12 above as if fully set forth herein.

28.     BOKF develops and maintains customer and employee relationships and business. These customer and employee relationships are a protectable interest of BOKF.

29.     In the course of conducting business, BOKF develops and maintains confidential business information, customer lists and data as well as methodologies and processes that are essential to the successful operation of their businesses (the "Confidential Information and Trade Secrets"). This information is a protectable interest of BOKF.

30.     BOKF conducts business and develops its protectable interests through its personnel.

31.     Bowen's position required that confidential customer information and financial strategy be provided to Bowen by BOKF.

32.     BOKF Private Wealth Advisors like Bowen have the following summary of duties:

The Private Wealth Advisor is primarily responsible for developing, maintaining, and expanding relationships with high net worth individuals, families, trusts, family companies and similar entities. The Advisor is responsible for managing client relationships including ongoing financial planning (as agreed upon with each client), education, and coaching with a focus on achieving the client's long-term financial goals. Advisor monitors client activity and provides input to the investment analysts responsible for portfolio and asset allocation to achieve the client's investment objectives. The Advisor is also responsible for identifying and developing business opportunities through existing clients, professional referral sources, and networking within the community.

Exhibit 10 (Private Wealth Advisor Position Description ).

33.     BOKF promised to and provided confidential customer information and financial strategies to Bowen.

34.     BOKF maintained its confidential data confidentially, using secure access, locks and keys, confidential employee identifiers and passwords, and Standards of Conduct, and policies and procedures.

35.     BOKF employees are obligated to adhere to Standards of Conduct, which include standards regarding confidentiality of customer data and following applicable law. *See* Exhibit 11 Standards of Conduct and Bowen Standards of Conduct Attestations.

36.     Bowen had a Representative Agreement which has provisions for notice of termination, requirements to follow applicable law and policies and procedures, confidentiality, return of data and agreements not to solicit.

37.     Paragraph 4B of Bowen's Representative Agreement obligates him to give thirty (30) days' written notice of termination.

38.     The primary purpose of the notice provision is to give BOKF the opportunity to prepare its customers for the transition to a new BOKF financial representative and to protect and solidify BOKF's relationship with its customers.

39.     Bowen's Representative Agreement also contains an agreement not to solicit established customers and not to solicit employees for one year following termination of employment at Paragraph 2J.

40.     Bowen's Representative Agreement also contains agreements to maintain confidentiality at Paragraph 2M and to return all data at Paragraph 2K.

41.     Bowen's Incentive Agreement, to which he attested to annually, also contains an agreement not to solicit established customers and an agreement not to solicit employees for one year following termination.

42.     BOKF employees, including Bowen, are required to follow BOKF Written

Supervisory Procedures ("WSPs").

43.   BOKF's Written Supervisory Procedures required that Bowen safeguard the privacy of customer records. Exhibit 12, WSP Excerpts (Chapter 2.7 Privacy) and (Chapter 2.20 Computer Records).

44.   BOKF FINRA Associated Persons like Bowen are required to regularly certify and Bowen did so regularly certify (promise) that:

> **Q. 45** I am aware that information I obtain and material and/or applications I develop in the course of my employment is proprietary property of my employer and cannot be used to my advantage, nor taken with me, should I change employers.
>
> **Q. 50** I certify that I have received a copy of the BOKFS Written Supervisory Procedures and Bank Dealer policy manual, if applicable, that I have read and understood the requirements, and that I am in compliance with the requirements.

*See*, by way of example only, Bowen's Responses to Questions 45 and 50, in particular at Exhibit 13.

45.   BOKF relied on the certifications and representations of Bowen to policies and procedures, practices, Standards of Conduct, and Written Supervisory Procedures.

46.   BOKF relied on Bowen's compliance with contractual obligations.

47.   BOKF's reliance on the promises of Bowen was reasonable.

48.   Injustice can be avoided only by enforcement of promises made by Bowen.

49.   Bowen acted in reckless disregard of his Agreements with and obligations to BOKF.

50.   Truist knew and/or should have known of Bowen's trade secrets and customer confidentiality requirements and obligations.

51.   Truist knew or should have known of the potential existence of Bowen's agreements regarding notice, confidentiality, return of data, and restrictive covenants.

52.     Upon information and belief, Truist knew of the actual existence of Bowen's agreements regarding notice, confidentiality, return of data, and restrictive covenants.

53.      Upon information and belief, Truist acted in reckless indifference of trade secrets and customer confidentiality laws.

54.     Upon information and belief, Truist acted in reckless indifference to the actual existence of Bowen's agreements regarding notice, confidentiality, return of data, and restrictive covenants.

**Defendant Breaches**[3]

55.     BOKF incorporates and realleges the allegations contained in ¶¶1-40 above as if fully set forth herein.

56.     Upon information and belief, Bowen began breaching his obligations to BOKF before his resignation without notice on September 26, 2023.

57.     On the morning on September 26, 2023, Bowen advised Staudt that he was resigning his position at BOKF and going to Truist via a letter drafted by Truist.

58.     After furnishing his resignation letter, Bowen declined any efforts by Staudt to retain Bowen as a BOKF employee.

59.     Bowen's resignation was delivered as effective immediately and made without providing the advanced notice as required by his Representative Agreement.

60.     In breach of his continuing duty of loyalty to BOKF, immediately following his resignation, Bowen was registered with and held himself out as employed by Truist.

61.     Given the fact that Bowen was able to begin mailing letters signed by his new

---

[3] BOKF's investigation is ongoing. BOKF reserves the right to provide additional information and/or otherwise amend its filing.

employer to customers he served at BOKF by 10:33 a.m. on the morning he resigned, Bowen was clearly breaching his duty of loyalty and confidentiality to BOKF prior to submitting his resignation.

62.    Upon information and belief, since his resignation, Bowen has continued to solicit BOKF customers to bring their business to Truist in breach of his obligations to BOKF.

**BOKF response to Defendant Breaches**

63.    BOKF incorporates and realleges the allegations contained in ¶¶1-48 above as if fully set forth herein.

64.    As discussed at the outset of this filing, on September 26, 2023, by the close of business, BOKF transmitted a demand letter to Bowen and Truist including a reminder regarding Bowen's obligations, a demand for compliance with with applicable agreements, and a demand for a search and return of any BOKF data.

65.    On September 29, 2023, after receiving a copy of Bowen and Truist's letter to BOKF customers, BOKF sent a second demand letter, seeking further information regarding the demonstrable breach of Bowen's obligations to BOKF.

66.    On October 3, 2023, BOKF finally received a response to its letters from Bowen and Truist, which denied that any improper conduct occurred or provided no substantive response.

**Defendants' Breaches Cause Irreparable Harm**

67.    BOKF incorporates and realleges the allegations contained in ¶¶1-52 above as if fully set forth herein.

68.    Upon information and belief, the Defendants are in possession of BOKF's Confidential Information and Trade Secrets.

69.    The Defendants have used and will be using BOKF Confidential Information and

Trade Secrets to contact and solicit BOKF customers.

70.     Once a customer moves accounts, the BOKF customer relationship is lost and damages are ongoing.

71.     BOKF's customer losses will extend well into the future.

72.     If left unrestrained, the Defendants, jointly and/or severally, will continue to use, disseminate or continue to use or disseminate BOKF's Confidential Information and Trade Secrets for the benefit of themselves or others, thereby, enabling the Defendants and others to unfairly compete with BOKF in the highly-competitive financial services industry.

73.     BOKF will suffer immediate and irreparable harm if Defendants' misappropriation of BOKF's Confidential Information and Trade Secrets and violations of obligations to BOKF are not immediately enjoined.

**Right to Equitable Relief**

74.     BOKF incorporates and realleges the allegations contained in ¶¶1-59 above as if fully set forth herein.

**Likelihood of Success on the Merits.**

75.     BOKF is likely to succeed on the merits of its claims because: (1) Bowen has misappropriated BOKF's valuable Confidential Information and Trade Secrets; (2) Bowen has breached the valid and enforceable agreement to maintain as confidential BOKF's Confidential Information and Trade Secrets; and (3) Bowen has violated agreements not to solicit customers.

76.     The non-solicitation provisions at issue are reasonable and narrow in scope as they are limited to one year following termination of employment and limited to prohibit only the direct solicitation of established BOKF customers and/or employees.

77.     BOKF will also likely prevail on its claims that Defendants have misused BOKF's

Confidential Information and Trade Secrets. Defendants could not have made direct contact with BOKF customers for their benefit without the without the use of information obtained through Bowen's work at BOKF.

**Irreparable Harm.**

78.    As evidenced by Bowen and Truist's mailing and customer reports of solicitation since the resignations, upon information and belief the Defendants are misusing BOKF confidential information.

79.    As set forth in ¶¶ 53-59 in particular, Defendants contact and solicitation of BOKF customers is to the benefit of Bowen and Truist and to the detriment of BOKF.

80.    BOKF's business opportunities, competitive advantages, Confidential Information and Trade Secrets, and relations with its customers, employees, and other business associates will be irreparably harmed if injunctive relief is not entered.

**Equities of the Parties and Public Policy.**

81.    BOKF will suffer far greater harm if injunctive relief is not granted than the Defendants will suffer if injunctive relief is granted. By contrast, Defendants will suffer minimal harm and will simply be required to not use the Confidential Information and Trade Secrets of BOKF.

82.    Granting injunctive relief serves the public interest.

83.    FINRA's recognition of the propriety of injunctive relief tips the balance of equities strongly in BOKF's favor because all of the Defendants are subject to FINRA regulation. FINRA expressly approves of pre-arbitration injunctive relief to preserve the status quo pending resolution of the claims on their merits.

### COUNT I.
### INJUNCTIVE RELIEF[4]

84.     BOKF incorporates and realleges the allegations contained in ¶¶1-69 above as if fully set forth herein.

85.     By virtue of the foregoing, BOKF has demonstrated a likelihood of success on the merits on the claims pled herein and that a balancing of the equities favors the issuance of a temporary restraining order, preliminary injunction, and permanent injunction against Defendants.

86.     The alleged misconduct of Bowen, described hereinabove, by virtue of the direct customer solicitation and misuse of BOKF Confidential Information, if allowed to continue, will irreparably harm and injure BOKF during the pendency of this action.

87.     Truist is liable for its own acts and omissions, as well as the acts and omissions of Bowen described herein, pursuant to the doctrine *respondent superior*.

88.     Defendants' misconduct, described hereinabove, if allowed to continue, would violate BOKF's rights, including but not limited to, BOKF's rights arising from: (i) the Agreements described herein, and (ii) the common law and statutory causes of action asserted herein.

89.     As set forth above, unless the Court issues a temporary restraining order herein preserving the *status quo*, Defendants will continue to irreparably harm the business and affairs of BOKF. This alleged misconduct is imminent and ongoing and will irreparably harm BOKF before Defendants and/or their counsel can be heard in opposition thereto.

90.     The nature of the damages incurred by BOKF through Defendants' alleged misconduct is and will continue to be unique, irreparable, and immediate as set forth above, and

---

[4] BOKF has filed this same date an Emergency Application seeking Injunctive Relief.

will afford BOKF no adequate remedy at law because of the unique nature of the damages and injuries.

91.     Injunctive relief is appropriate for the immediate and ongoing harm being caused by the Defendants.

92.     Bowen agreed in his Representative Agreement, that the non-solicitation obligations may be enforced by temporary and permanent injunctive relief.

93.     BOKF hereby respectfully applies to the Court for a Temporary Restraining Order, for a preliminary injunction during the pendency of this litigation and, thereafter, for a permanent injunction, ordering Defendants to refrain from doing any or all of the following, either directly or indirectly, acting individually or in concert, or with the assistance of any other person:

      a.     directly soliciting in any manner (by telephone, mail, internet, e-mail or any other type of communication) any business from any established client or customer of BOKF in violation of applicable agreements;

      b.     making or participating in any mail or email communication to a BOKF customer which is not part of a mass mailing to a public of which established customers of BOKF are an insignificant part the purpose of which was not to communicate with established customers of BOKF and (ii) having or participating in any meeting with or making or participating in telephone call to such customer unless initiated by the such customer or unless such customer was an established social friend of the Representative and the purpose of the telephone call was strictly social.

      c.     using, disclosing, or transmitting for any purpose, including solicitation of said clients or customers, the information contained in the BOKF

Confidential Information, including, but not limited to, the names, addresses, and confidential financial information of the clients or customers referenced therein; and that all original records and copies and/or other reproductions thereof, in whatever form, be returned to BOKF immediately;

      d.     ordering Defendants to provide a list of all BOKF customers to whom Defendants have contacted or solicited, either directly or indirectly, and a script of such contacts;

      e.     ordering Defendants to return immediately all BOKF Confidential Information in their possession;

      f.     and all other such acts as this Court deems appropriate for injunctive relief.

Based on the foregoing, BOKF prays for entry of a temporary restraining order, for a preliminary injunction during the pendency of this litigation and, thereafter, for a permanent injunction, in its favor.

**COUNT II.**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT 18 U.S.C. § 1831, ET. SEQ.**

94.    BOKF incorporates and realleges the allegations contained in ¶¶s 1-79 above as if fully set forth herein.

95.    BOKF owns valuable Confidential Information and Trade Secrets, including but not limited to, customer lists and data, and confidential and proprietary business information and methods.

96.    BOKF has spent significant time and money developing such Confidential Information and Trade Secrets.

97.    The Confidential Information and Trade Secrets are kept confidential and not

publicly disclosed.

98.     BOKF provided Bowen access to and use of its Confidential Information and Trade Secrets in the course of his long-term employment.

99.     The Confidential Information and Trade Secrets to which Bowen had access is related to BOKF's financial services that are used in, or intended for use in, interstate or foreign commerce.

100.    Misappropriation of this type of information undermines BOKF's competitive position in the highly competitive financial services industry.

101.    Bowen misappropriated BOKF's Confidential Information and Trade Secrets in order to benefit himself and/or Truist.

102.    The Defendants' use of BOKF's Confidential Information and Trade Secrets to contact BOKF's customers is done knowingly, willfully, and intentionally without the consent of BOKF.

103.    Use of BOKF confidential information:

a.      Has caused immediate and irreparable harm to BOKF; and

b.      Will continue to cause immediate and irreparable harm to BOKF.

104.    Pursuant to § 1836 of the Defend Trade Secrets Act, BOKF is entitled to injunctive relief from this Court.

105.    As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

106.    As a direct and proximate result of Defendants' actions, BOKF has suffered or will

suffer damages in an amount in excess of $75,000.00.

### COUNT III.
### VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT
### TEX. CIV. PRAC. & REM. CODE § 134A.001 ET. SEQ.

107.    BOKF incorporates and realleges the allegations contained in ¶¶s 1-92 above as if fully set forth herein.

108.    By virtue of Bowen's employment relationship with BOKF, Bowen was obligated to maintain the confidentiality of BOKF's Confidential Information and Trade Secrets.

109.    Bowen acknowledged his confidentiality obligations to BOKF in his attestation to the Standards of Conduct.

110.    Bowen acknowledged his confidentiality obligations to BOKF in his Representative Agreement.

111.    BOKF requires its employees to keep confidential BOKF's customer information and trade secrets.

112.    BOKF employees are obligated to adhere to Standards of Conduct which include confidentiality obligations. BOKF employees are obligated to regularly attest to Standards of conduct.

113.    BOKF employees certify (make promises) to keep customer information private, BOKF's Confidential Information and Trade Secrets are kept confidential and are not publicly disclosed.

114.    BOKF derives economic and financial value from the confidentiality of its Confidential Information and Trade Secrets.

115.    Bowen has misappropriated BOKF's Confidential Information and Trade Secrets, including the use of customer lists to contact BOKF customers, in violation of the Texas Uniform

Trade Secrets Act.

116.    Bowen has disclosed and will continue to disclose and use BOKF's Confidential Information and Trade Secrets to compete directly against BOKF.

117.    This misappropriation is unauthorized and conducted with the specific intent to harm BOKF and exploit BOKF's competitive advantage.

118.    Defendants have been unjustly enriched as a result of Bowen's misappropriation.

119.    The threatened and actual injuries that BOKF has suffered and will suffer are immediate and irreparable. Because of the difficulty in quantifying injury and harm to BOKF's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets. Defendants' wrongful use of such Confidential Information and Trade Secrets cannot be adequately compensated by damages alone.

120.    BOKF lacks an adequate and compete remedy at law and an equitable remedy is appropriate to protect the economic and financial value of BOKF's Confidential and Trade Secrets from Bowen's misappropriation.

121.    Pursuant to § 134A.003 of the Texas Uniform Trade Secrets Act, BOKF is entitled to injunctive relief from this Court.

122.    As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

123.    As a direct and proximate result of Defendants' actions, BOKF has suffered or will suffer damages in an amount in excess of $75,000.00.

COUNT IV.
BREACH OF CONTRACT BY BOWEN

124.    BOKF incorporates and realleges the allegations contained in ¶¶ 1-109 above as if fully set forth herein.

125.    BOKF promised to provide confidential information, strategies, and training to Bowen.

126.    BOKF provided confidential information and strategies and training to Bowen.

127.    Bowen promised and agreed to abide by the terms of the Agreements in consideration for the compensation, benefits, training, employment and opportunities provided by BOKF.

128.    Bowen breached the Agreements in the following ways:

c.    Failing to furnish 30-day notice of termination of the Agreements;

d.    directly soliciting established BOKF customers in wrongful conspiracy with Truist; and,

e.    removing and failing to return immediately, and wrongfully converting and using, BOKF Confidential Information; and

f.    conspiring to breach the Agreements.

129.    Truist, by concerted action, and in conspiracy with the Bowen assisted Bowen in his breaches and violations.

130.    As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

131.    As a direct and proximate result of (i) the Bowen's breach his of duty of loyalty, and (ii) breaches of the Agreements, and (iii) his concerted action and conspiracy with Truist,

BOKF has suffered or will suffer damages in excess of $75,000.00.

### COUNT V.
### RELIANCE/ESTOPPEL

132.    BOKF incorporates and realleges the allegations contained in ¶¶s 1-117 above as if fully set forth herein.

133.    Bowen made promises to BOKF as set forth in this Complaint.

134.    Bowen reasonably expected BOKF to rely (to take certain actions and/or to forbear certain actions) upon his promises, taking certain actions and/or forbearing certain actions.

135.    BOKF relied on the promises of Bowen, taking certain actions and/or forbearing certain actions.

136.    Injustice can only be avoided by enforcement of Bowen's promises.

137.    As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

138.    As a direct and proximate result of Defendants' actions, BOKF has suffered or will suffer damages in an amount in excess of $75,000.00.

### COUNT VI.
### UNJUST ENRICHMENT

139.    BOKF incorporates and realleges the allegations contained in ¶¶s 1-124 above as if fully set forth herein.

140.    Bowen has wrongfully retained and utilized the benefits of BOKF's Confidential Information and Trade Secrets to benefit himself and his new working relationships with Truist.

141.    The benefits wrongfully utilized by the Bowen to enrich himself and Truist to the

loss and detriment of BOKF.

142.     BOKF is entitled to recover the value of the benefits wrongfully retained and utilized by the Defendants.

143.     Bowen would be unjustly enriched if allowed to retain incentive compensation to the extent Incentive Agreements and the agreements not to solicit contained therein are not enforced.

144.     As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

145.     As a direct and proximate result of Defendants' actions, BOKF has suffered or will suffer damages in an amount in excess of $75,000.00.

### COUNT VII.
### TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS EXPECTANCIES BY TRUIST

146.     BOKF incorporates and realleges the allegations contained in ¶¶s 1-131 above as if fully set forth herein.

147.     BOKF has valid and enforceable contracts with Bowen.

148.     BOKF has valid contracts and business expectancies with customers.

149.     Truist knew of BOKF's contract with Bowen.

150.     Truist knew of BOKF's business expectancies with customers.

151.     Truist knew that the contracts were intended to protect BOKF's substantial investment in its business operations, customers, and employees.

152.     Truist encouraged, induced, facilitated, abetted and intended Bowen to breach his contractual obligations to BOKF.

153.    Truist encouraged, induced, facilitated, and abetted, misuse of the Confidential Information and Trade Secrets misappropriated by Bowen to the pecuniary benefit of Truist.

154.    As a direct and proximate result of Defendants' actions and inactions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

155.    As a direct and proximate result of Defendants' actions, BOKF has suffered or will suffer damages in an amount in excess of $75,000.00.

### COUNT VIII.
### BREACH OF DUTY OF LOYALTY

156.    BOKF incorporates and realleges the allegations contained in ¶¶s 1-141 above as if fully set forth herein.

157.    Bowen owed a duty of loyalty to BOKF.

158.    Bowen wrongfully misappropriated BOKF's Confidential Information and Trade Secrets, now being used to solicit BOKF customers.

159.    Bowen ignored his obligations not to solicit BOKF customers.

160.    Bowen engaged in a concerted plan with Truist to leave BOKF without notice in violation of his agreements in favor of BOKF.

161.    Bowen breached his duty of loyalty to BOKF.

162.    As a direct and proximate result of Defendants' actions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

163.    As a direct and proximate result of Defendants' actions, BOKF has suffered or will

suffer damages in an amount in excess of $75,000.00.

### COUNT IX.
### CONSPIRACY

164.    BOKF restates, realleges, and incorporates herein by reference all of the allegations contained in ¶¶1 through 149 as if fully set forth herein. .

165.    Each of the Defendants has, individually and/or jointly, encouraged BOKF customers to leave their relationship with BOKF.

166.    The interference by each of the Defendants, individually and/or jointly, did cause actual loss to BOKF for which BOKF seeks damages here.

167.    The interference by each of the Defendants, individually and/or jointly, will cause actual loss to BOKF for which BOKF seeks damages here.

168.    In committing the acts described hereinabove, Defendants conspired to combine and act in concert with the intent to wrongfully interfere with BOKF'S economic, business and contractual relations, rights and interests.

169.    Defendants acted intentionally, with malice and with reckless disregard for BOKF's rights.

170.    As a direct and proximate result of Defendants' actions, BOKF has been harmed and will continue to be harmed by the Defendants' actions and inactions as set forth herein and seeks damages related to the harm caused thereby in an amount to be proven at trial (or arbitration as applicable).

171.    As a direct and proximate result of Defendants' wrongful conspiracy, BOKF has suffered or will suffer damages in an amount in excess of $75,000.00.

### COUNT X.
### ATTORNEYS' FEES

172.    Plaintiffs demand attorneys' fees under Texas law, specifically but not limited to under Texas Civil Practice and Remedies Code section 38.001 for Bowen's breach of the attached employment agreements with BOKF.

## PRAYER FOR RELIEF

**Injunctive Relief**

WHEREFORE, Plaintiffs BOKF, NA and BOK Financial Securities, Inc. as the legal successor in interest to BOSC, Inc., individually and jointly, respectfully request that this Court award injunctive relief to them in the form of an Order enjoining Defendants from:

a.   Enjoining Bowen from (i) misappropriating, using or disclosing to any person or entity BOKF's Confidential Information and Trade Secrets or (ii) possessing any original or copies of BOKF's Confidential and Trade Secrets in any form;

b.   Enjoining the Defendants from contacting BOKF customers for thirty (30) days;

c.   After the expiration of 30 days, for the following 365 days, enjoining Defendants from (i) making or participating in any mail or email communication to a BOKF customer which is not part of a mass mailing to a public of which established customers of BOKF are an insignificant part the purpose of which was not to communicate with established customers of BOKF and (ii) having or participating in any meeting with or making or participating in a telephone call or any other type of communication to such customer, unless initiated by such customer or unless such customer was an established social friend of Bowen and the purpose of the telephone call was strictly social between Bowen and such customer;

d.   Enjoining the Defendants from soliciting in any manner (by telephone, mail, internet, e-mail or any other type of communication) BOKF'S established customers or clients in violation of applicable agreements;

e.   Enjoining the Defendants from soliciting in any manner (by telephone, mail, internet, e-mail or any other type of communication) BOKF employees in violation of applicable agreements.

f.   Granting to BOKF such other and further relief that this Court deems just and proper.

And further ordering that

a.   Defendants promptly provide BOKF: (i) a list of all BOKF clients contacted by the Defendants, (ii) copies of all communications by Defendants with BOKF clients since recruiting contact by Truist and since Bowen's departure from BOKF, (iii) any script used by Defendants to contact BOKF clients since recruiting contact by Truist and since Bowen's departure from BOKF, and (iv) a list of BOKF clients contacted by Defendants since recruiting contact by Truist and since Bowen's departure from BOKF.

b.   Defendants immediately return all BOKF Confidential Information in their possession, including but not limited to original records and copies, and/or reproductions of documents (in whatever form) in Defendants' possession, including information related to BOKF's clients;

c.   Defendants preserve all electronically stored BOKF Confidential Information and Trade Secrets and each tangible item upon which confidential information is contained;

d.   Bowen allow a third-party forensic vendor to image all electronic devices and systems Bowen has used since January 1, 2022, to identify any BOKF Confidential Information and Trade Secrets existing on those devices and to, once the parties are satisfied that all evidence has been forensically preserved and this

matter has concluded, delete thereafter all BOKF Confidential Information and Trade Secrets existing on those devices;

e.      all other acts this Court deems appropriate for injunctive relief.

## NON-INJUNCTIVE RELIEF

WHEREFORE, collective Plaintiff BOKF, requests that this Court award judgment for BOKF[5] and against the Defendants as requested herein, for prejudgment and post judgment interest, for attorney's fees and costs, and for such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

BOKF demands a trial by jury for non-equitable claims.

Respectfully submitted,

*/s/ Mary M. Melle*
Mary M. Melle
Texas Bar No. 24051789
mmelle@cbsattorneys.com
CALHOUN, BHELLA & SECHREST, LLP
325 N. Saint Paul St., Ste. 2300
Dallas, Texas 75201
(214) 981-9200 (t)
(214) 981-9203 (f)

Nora O'Neill, OBA # 19901*
FREDERIC DORWART, LAWYERS
124 East Fourth Street
Tulsa, Oklahoma 74103
jclayman@fdlaw.com
(918) 583-9922 (Tel.)
(918) 584-2729 (Fax)

---

[5] BOKFS does not seek non-injunctive relief on its claims against FINRA Members in this forum as BOKFS will have filed a FINRA Statement of Claim as discussed at the outset of the Complaint.

\* This attorney will seek pro hac vice
admission.

**ATTORNEYS FOR PLAINTIFFS,
BOKF, NA AND BOK FINANCIAL
SECURITIES, INC.**

## VERIFICATION

| | | |
|---|---|---|
| **State of Texas** | § | |
| | § ss. | |
| **County of Dallas** | § | |

I, Patrick J. Staudt, Senior Vice President of BOKF, upon being duly sworn and upon oath, state that I am authorized to act as agent for BOKF for purposes of verifying the foregoing complaint.

I have read the foregoing Verified Complaint with Request for Injunctive Relief and have personal knowledge of the contents thereof. The statements contained therein are true and correct based on my personal knowledge and my review of company business records that were made at or near the time of the event or condition recorded and kept in the regular course of business of BOKF. As to any matters in the complaint stated to be alleged upon information and belief, I believe those matters to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Patrick J. Staudt
Senior Vice President

Subscribed to and sworn to before me this 6th day of October 2023, by Patrick J. Staudt, Senior Vice President of BOKF.

Notary Public

Marillenary Ipina-Barajas
Notary Public, State of Texas
Comm. Expires 03-28-2026
Notary ID 12644165-2

29